UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACQUELINE R.,

              Plaintiff,                      **DECISION AND ORDER**

v.

                                        1:21-cv-00097-EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

# INTRODUCTION

Represented by counsel, Plaintiff Jacqueline R. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB").[1]  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 19; Dkt. 23).  For the reasons discussed below, Plaintiff's motion (Dkt. 19) is granted and the Commissioner's motion (Dkt. 23) is denied.

---

[1] Although Plaintiff's complaint, as well as the ALJ decision and the parties' briefs, refer to Plaintiff's application for Supplemental Security Income ("SSI"), the record does not contain an application for SSI and, instead, appears to relate to Plaintiff's DIB claim only.  (Dkt. 11 at 40, 75-03, 86, 110, 178-79).

**BACKGROUND**

Plaintiff protectively filed her application for DIB on August 27, 2018. (Dkt. 11 at 75, 85, 178-79).[2] In her application, Plaintiff alleged disability beginning June 14, 2017. (*Id*. at 75-76, 178). Plaintiff's application was initially denied on March 27, 2019. (*Id*. at 75-84). At Plaintiff's request, a hearing was originally held before administrative law judge ("ALJ") Flor M. Suarez on June 8, 2020. (*Id*. at 38-74). On July 16, 2020, the ALJ issued an unfavorable decision related to Plaintiff's claim. (*Id*. at 19-33). Plaintiff then requested review by the Appeals Council, which the Council denied on November 20, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 5-9).

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[2]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.     The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. (Dkt. 11 at 21). At step one of the analysis, she opined that Plaintiff had not engaged in substantial gainful work activity since June 14, 2017, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: migraine headaches, adjustment disorder with mixed anxiety and depressed mood, and

degenerative changes in the thoracic spine. (*Id*. at 22). The ALJ also determined that Plaintiff's personality disorder, social phobia, rule out diagnosis of a cognitive impairment, rule out post-concussion syndrome, seasonal allergic rhinitis, a healing rib fracture or small fibrous lesion, Raynaud's syndrome without gangrene, a bunion, and gastroesophageal reflux disease were all non-severe impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 23-26). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could never climb ladders, ropes, scaffolds, or crawl, could frequently climb ramps or stairs, stoop, crouch, or kneel, and should avoid concentrated exposure to excessive noise and vibration, dangerous moving machinery, and unprotected heights. (*Id*. at 26). The ALJ also limited Plaintiff to simple and routine tasks, work in a low-stress job with only occasional changes in the work setting that allows Plaintiff to be off task five percent of the day in addition to regularly scheduled breaks, and only occasional interaction with the public, coworkers, and supervisors. (*Id*.).

At step four, the ALJ found that Plaintiff had been unable to perform any past relevant work. (*Id.* at 31). Considering Plaintiff's age, education, and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy, such as price marker, office helper, and file clerk, that Plaintiff could perform. (*Id*. at 32). As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date of June 14, 2017, through the date of the ALJ's decision. (*Id*.).

**II.     The ALJ Determination is not Supported by Substantial Evidence.**

Plaintiff argues that remand is necessary because the ALJ: (1) failed to base her finding that Plaintiff would be off task five percent of the day on substantial evidence of record; (2) failed to access her somatoform disorder when addressing her subjective complaints; and (3) did not properly consider Plaintiff's headache disorder.  (Dkt. 19-1 at 19-28).  Remand is warranted because the ALJ's off-task finding was not supported by substantial evidence.

It has been well-recognized that specific RFC assessments, such as those identifying the percentage of off-task time, must be based on the record evidence and not on an ALJ's "own surmise." *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (remanding where ALJ improperly "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that he would be off task six minutes out of every hour when no evidence supported the claimant's ability to "perform sedentary work if he could take a six- minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday").  "[W]here an ALJ includes a specific functional limitation, he must have an evidentiary basis for it.  A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given limitation." *Daniel W. v. Comm'r of Soc. Sec.*, No. 20-CV-1786-FPG, 2023 WL 3220502, at *2 (W.D.N.Y. May 3, 2023); *see also Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("Case law from this District reflects that if an ALJ believes that an off-task time

limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation.").

Although an ALJ is not limited to adopting only those limitations that are explicitly supported by the record and "is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations[,]" *Daniel W.,* 2023 WL 3220502, at *2, remand is warranted where the ALJ makes a detailed off-task assessment but does not connect it to any evidence in the record. "Without some explanation from [the ALJ] to the tether between her RFC and the . . . medical opinions or statements from plaintiff, the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, No. 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018); *see also Martia P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-560-DB, 2021 WL 2349397, at *4 (W.D.N.Y. June 9, 2021) ("there was no medical evidence suggesting that [p]laintiff would be off task 5% of the workday, and there was no explanation from the ALJ to tether this limitation to the opinion evidence or to any statements from [p]laintiff").

Here, the review of the record reveals that even though the ALJ succinctly considered the evidence in making her RFC determination, her specific finding that Plaintiff would be off task five percent of the day was not rooted in any particular evidence. As such, the Court cannot perform its required review of the ALJ's decision and finds that remand is warranted. *See Kimberly R. v. Comm'r of Soc. Sec.*, No. 21-CV-00079-LJV, 2022 WL 17584196, at *2 (W.D.N.Y. Dec. 12, 2022) ("without a 'tether' between the specific limitation and the medical record . . . this Court cannot perform its required

meaningful review of the ALJ's decision." (internal citations omitted)).  Although the ALJ assessed Plaintiff's off-task limitation based on her "reported side effects from medications, including forgetfulness, and her complaints of being overwhelmed by work," (Dkt. 11 at 28), the ALJ's analysis is silent as to how she translated Plaintiff's testimony about being forgetful and overwhelmed into Plaintiff being off task for five percent of a workday.  Therefore, without further explanation from the ALJ, the Court cannot discern how she arrived at the conclusion that Plaintiff's limitations would be accommodated by affording Plaintiff only five percent and not some other percentage of off-task time.

The record reveals that Plaintiff sustained a head injury on June 14, 2017, when a large sheet of plywood fell on her head while she was holding a ladder.  (Dkt. 11 at 365, 464).  Even though at the time of the accident she suffered minor physical injuries that required a few stitches to her head, Plaintiff's subsequent physical and emotional response to the injury exacerbated with time.  (*Id*. at 87, 459-60).  Plaintiff's treating neurologist Dr. Alexander Rovner, M.D. ("Dr. Rovner") opined that Plaintiff was suffering from moderate post concussive syndrome, repeatedly noted her complaints of headaches, muscle spasms, and anxiety stating that Plaintiff could not go through the day without feeling completely exhausted at times.  (*Id*. at 369, 651, 649, 655).  Indeed, Plaintiff's headaches increased in severity and frequency after the accident; she started having daily muscle spasms of her scalp area, as well as squeezing and throbbing pain on top of her head, anxiety, short-term memory loss, and lack of focus and concentration, all of which caused Plaintiff to feel confused, forgetful, overwhelmed, and withdrawn.  (*Id*. at 51, 365-66, 368-70, 475, 477, 481, 595).  She indicated that she could not work because of the persistent muscle spasms,

and pain of her scalp and head, as well as anxiety, memory loss, and difficulty concentrating caused by her sensory response to stimulation that she felt almost on a daily basis. (*Id*. at 51-52, 365, 644). She reported that her headaches were severe in nature, occurred daily, and were caused by stress. (*Id.* at 366, 649). The pain caused by the muscle spasms of her scalp was so severe that it made Plaintiff stop whatever she was doing or leave because it "hurt[] so much or it [was] so distracting that [she did] not want to be around anything or anybody." (*Id*. at 52). She testified that she struggled with concentration and focus when hearing multiple conversations happening around her, as well as with handling multiple tasks, being around people, using computer, or surfing social media, all of which overwhelmed her, brought anxiety, memory lapses, muscle spasms, and made her head pain worse. (*Id*. at 55-56, 366, 460, 581, 645, 649). Physical pain, memory issues, and even a small amount of information received impacted Plaintiff's engagements with people, made her feel drained, forgetful, and overwhelmed, and forced her to step away from a situation, leave, or lie down during the day. (*Id*. at 55-56, 62, 64, 365-66, 645). Plaintiff operated a wedding flower arrangement business prior to the head injury, and had to first cut down and then eventually stop working due to her memory loss, inability to focus on tasks, and being overwhelmed with business-related tasks. (*Id*. at 56-58, 581, 599, 649-50). Due to the increase in her sensory response and memory loss following the injury, Plaintiff could no longer process information related to her business or tolerate being present during business discussions, and made mistakes on business orders, forgot to pay bills or forgot about having prior business conversations, all of which

quickly overwhelmed her and made her withdraw from the conversations. (*Id*. at 56-58, 645, 650, 652).

During the relevant period Plaintiff was prescribed multiple medications including injections and nerve block to treat her symptoms that either made her feel drowsy and lightheaded, or did not provide any substantial relief or made her symptoms worse. (*Id*. at 52, 369, 474, 477, 481, 648-49). She was also prescribed medical marijuana for pain and muscle spasms of her scalp, which either provided "marginal results, if any at all," or reduced her pain only temporarily. (*Id*. at 53, 369-70, 481, 645). Although Plaintiff's migraines occurred two to three times per month, they would last from 45 minutes to an hour, and took up to three hours to subside to the point that Plaintiff could function again. (*Id.* at 53).

The Commissioner is correct to point out that no medical professional opined about Plaintiff's specific off-task limitation, and in doing so relies on the opinions of consultative and state agency physicians E. Gagan, K. Lieber-Diaz, Psy.D., and Janine Ippolito, Psy.D. ("Drs. Gagan, Lieber-Diaz, and Ippolito"), who opined that Plaintiff had mild limitations in concentrating, persisting, maintaining pace, sustaining an ordinary routine, and maintaining well-being. (Dkt. 11 at 81-82, 94-95, 461; Dkt. 23-1 at 8). However, the Commissioner's reliance on such opinions is misplaced. Although the doctors found Plaintiff's ability to sustain concentration and ordinary routine, perform tasks, maintain well-being, and control behavior to be mild in nature and did not interfere with her ability to function, the ALJ disagreed with their assessments and found them to be only partially persuasive because the physicians did not take into account Plaintiff getting overwhelmed

at work, being forgetful in performing tasks, and having difficulty concentrating and interacting with others. (Dkt. 11 at 29). As a result, the ALJ found Plaintiff to be moderately limited in the area of social interaction with others and in the ability to concentrate, persist, or maintain pace. (*Id.*). While the Court does not find the ALJ's disagreement with the assessments of Drs. Gagan, Liebner-Diaz, and Ippolito problematic as much as the ALJ is free to resolve conflicting evidence and, if needed, deviate from consultative examiners' recommendations to decrease plaintiff's RFC based on other evidence in the record, *see Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020), neither assessment was factored in the ALJ's decision as support for Plaintiff's specific five percent off-task limitation. Additionally, none of the findings of Drs. Gagan, Liebner-Diaz, and Ippolito translate into a specific conclusion that Plaintiff should be off task for five percent of the day or for any other percentage for that matter. *See Matthew P., v. Comm'r,* No. 20-CV-1047-FPG, 2021 WL 2946411, at *3 (W.D.N.Y. July 14, 2021) ("Other than noting various medical records where [p]laintiff has differences in attention and concentration levels ranging from normal to moderate limitations, neither the ALJ nor the Commissioner can point to anything in the record that suggests how much time [p]laintiff would be off-task in a work setting due to his mental limitations, sleep disorder, or tremors."). Therefore, although the ALJ found Plaintiff to be more limited than determined by Drs. Gagan, Liebner-Diaz, and Ippolito, and considered some of Plaintiff's symptoms and her response to medication, she did not undertake any attempt to link the evidence of Plaintiff's symptoms into Plaintiff's specific off-task finding. As such, remand is required. *See Leanne F. v. Comm'r of Soc. Sec.*, No. 14-CV-00849, 2022 WL 195748,

at *4 (W.D.N.Y. Jan. 21, 2022) (the ALJ's determination that plaintiff would be off task for an average of five minutes per hour was not supported by the record where the ALJ mentioned the effect of medication and mental status examinations but did not attempt to tie any evidence to the specific off-task finding).

Additionally, the ALJ's error was not harmless because the VE testified that work would be precluded if an individual was off task fifteen percent or more of a workday. (Dkt. 11 at 70). He also indicated that no jobs provided for an opportunity for the individual to lie down during the day or take an unexpected break three to four times per week for thirty minutes. (*Id*. at 71-72). Because the ALJ did not tether the evidence of record to the five percent off-task determination in her analysis, it remains unclear why Plaintiff's limitations warranted only that off-task percentage and not some other off-task limitation, which, according to the VE, at fifteen percent would be work preclusive. *See Cosnyka*, 576 F. App'x at 46 ("Because there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the claimant] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits."). Accordingly, the matter is remanded for further proceedings so that the ALJ can further develop the record and properly address the time that Plaintiff can remain off task over the course of the day.[3]

---

[3] Because the Court has determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach the other issues raised by Plaintiff in support of remand. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 19) is granted and the Commissioner's motion for judgment on the pleadings (Dkt. 23) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       July 6, 2023
             Rochester, New York

---

ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).